**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| POSTNET INTERNATIONAL FRANCHISE CORPORATION., a Nevada corporation; | |
| Plaintiff, | Case No. 6:08-cv-106-ORL-31 GJK |
| vs. | **VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF** |
| R&B CENTRAL ENTERPRISES, INC., a Florida corporation, RODGER L. TAYLOR, an individual, and BEATRIZ I. TAYLOR, an individual; | |
| Defendants. | |

Plaintiff PostNet International Franchise Corporation ("PostNet") for its Verified Complaint for Declaratory, Injunctive and Other Relief against Defendants R&B Central Enterprises, Inc., Rodger L. Taylor and Beatriz I. Taylor (collectively, "Defendants") alleges as follows:

## SUMMARY OF THE CASE

1.      In this action, PostNet asserts the following claims for relief: (i) a claim for a declaratory judgment that Defendants have breached their post-termination contractual obligations; (ii) permanent injunctive relief; and (iii) violations of the Lanham Act, 15 U.S.C § 1501 *et seq.* The relief sought is necessary to prevent irreparable harm caused by Defendants' unauthorized operation of a competing business and by Defendants' continuing misappropriation and misuse of PostNet's confidential and proprietary information.

2.     Defendants are former PostNet franchisees who received the benefit of PostNet's confidential and proprietary information and brand for the purpose of operating a PostNet business center (the "PostNet Center").

3.     Defendants repeatedly and expressly agreed and acknowledged that the information they received from PostNet was both confidential and valuable, and that their use of PostNet's brand, techniques and methods afforded them a unique commercial advantage.

4.     As of December 21, 2007, Defendants' PostNet franchise was indisputably terminated.  Upon termination, Defendants expressly agreed to:

   a.  Cease operation of Defendants' PostNet Center;

   b.  Return all confidential information regarding the operation of the PostNet Center;

   c.  Pay all sums due to PostNet, its affiliates or designees;

   d.  Cease using PostNet's Proprietary Marks as defined in the parties' franchise agreement;

   e.  Remove all signs bearing PostNet's name from the PostNet Center; and

   f.  Refrain from any participation in a business located at the Approved Location of the PostNet Center, as defined in the parties' franchise agreement, or within a ten-mile radius of the PostNet Center that offers the same or similar services as those offered by PostNet.

5.     Despite these contractual obligations, Defendants are still using PostNet's confidential and proprietary information, and are operating a competing business that is confusingly similar to Defendants' former PostNet franchise at the same location of Defendants' former PostNet business (the "Competing Business").

2

6.     Specifically, Defendants are wrongfully luring PostNet's customers to their Competing Business and are preventing PostNet from establishing a new franchise in the location of Defendants' former PostNet Center.

7.     Defendants are also wrongfully using PostNet's trade name, trade marks and other proprietary information in the operation of the Competing Business.

8.     Under these circumstances, PostNet will suffer irreparable harm and has no adequate remedy at law to prevent Defendants' continued operation of the Competing Business and use of PostNet's System and Proprietary Marks, necessitating the declaratory and injunctive relief sought in this action.

## PARTIES

9.     PostNet is a Nevada corporation with its principal place of business located at 1819 Wazee Street, Denver, Colorado 80202.

10.     Defendant R&B Central Enterprises, Inc. is a Florida corporation with its principal place of business located at 4195 West Lake Mary Blvd., Lake Mary, Florida 32746.

11.     Defendant Rodger L. Taylor is a resident of Longwood, Florida.

12.     Defendant Beatriz I. Taylor is a resident of Longwood, Florida.

## JURISDICTION AND VENUE

13.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

14.     Jurisdiction over the claims and cause of action is also proper pursuant to 15 U.S.C § 1501 *et seq.*

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

I.      **The Franchise Agreement**

16.     On May 1, 2000, Defendants and PostNet entered into a PostNet International Franchise Corporation Franchise Agreement (the "Franchise Agreement"), a copy of which is attached as **Exhibit A**.

17.     Pursuant to the Franchise Agreement, PostNet granted Defendants a non-exclusive license to operate a PostNet Center using PostNet's unique and distinctive system relating to the establishment and operation of retail stores which are postal, business, and communications centers offering products and services such as shipping, packaging, copying, money orders, printing, and notary services (the "PostNet System"), and to use PostNet's trade names, service marks, trademarks, logos, emblems, and indicia of origin (the "Proprietary Marks") in the operation of Defendants' PostNet Center. *See* Exhibit A.

18.     Among the Proprietary Marks licensed to Defendants were the following federally registered trademarks, registered and owned by PostNet:  Service Mark 1,801,313 (POSTNET) and Service Mark 3,208,053 (POSTNET CREATE DUPLICATE DELIVER).  A copy of these Marks is attached as **Exhibit B**.

19.     By entering into the Franchise Agreement, Defendants acknowledged that PostNet expended "time, skill, effort, and money" in developing the PostNet System and the Proprietary Marks, and that PostNet is the owner of the PostNet System and Proprietary Marks. *Id.*

4

20.     Pursuant to section 3.2 of the Franchise Agreement, Defendants agreed to pay PostNet a "continuing weekly royalty fee in an amount equal to four percent (4%) of the Gross Sales for the Center." *Id.*[1]

21.     Pursuant to section 11.6 of the Franchise Agreement, Defendants also agreed to "provide to PostNet, for review and auditing, such other information as PostNet may reasonably designate, on the forms and in the matter as are reasonably designated by PostNet." *Id.*

22.     Moreover, pursuant to section 11.7 of the Franchise Agreement, Defendants agreed that "PostNet or its designated agents shall have the right at all reasonable times to examine and copy, at PostNet's expense, the books, records, accounts, and business tax returns of [Defendants]," and to "have an independent audit made of the books and records of [Defendants]." Pursuant to section 11.7, "If an inspection or audit reveals that any payments due to PostNet have been understated in any report to PostNet, then [Defendants] shall immediately pay to PostNet the amount understated upon demand, in addition to interest ... at the rate of eighteen percent per annum calculated monthly."

23.     Defendants also agreed that in the event of termination of the Franchise Agreement, Defendants would abide by certain post-termination covenants set forth in section 14 of the Franchise Agreement.  In particular, Defendants agreed to:

a.      "immediately cease to operate the Center, and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of PostNet;"

---

[1] Pursuant to an addendum to the Franchise Agreement, attached to Exhibit A, the parties agreed that the continuing weekly royalty fee would be three percent (3%) of the Gross Sales for the Center through March 31, 2007, and 4% of the Gross Sales from April 1, 2007 through the duration of the Franchise Agreement.

      b.   "immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; the Proprietary Marks; and all other proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the System;"

      c.   "promptly pay all sums owing to PostNet and its affiliates," including, in the event of Defendants' termination, "all damages, costs, and expenses, including reasonable attorneys' fees, incurred by PostNet as a result of the default;" and

      d.   "immediately return the Manual and all other documents which contain confidential information relating to the operation of the Center." *See* Exhibit A.

24.    Finally, Defendants agreed that, in the event of termination of the Franchise Agreement, that they "shall not, without PostNet's prior written consent, for a continuous uninterrupted one year period commencing upon the date of … termination under this Agreement (regardless of the cause for termination) … own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which offers the same or similar products or services as those offered by the Center, and which is located: (i) at the Approved Location; or (ii) within a ten mile radius of the Protected Territory." *Id.*

25.    Defendants Rodger L. Taylor and Beatriz I. Taylor executed a personal guarantee in which they agreed to be personally responsible for the full and timely performance of the Franchise Agreement and the covenants contained therein.  A copy of the Guarantee is attached as **Exhibit C**.

**II.      Termination of the Franchise Agreement**

26.      On November 5, 2007, and again on December 12, 2007, PostNet notified Defendants of their obligation to pay past-due royalties, interest and audit fees totaling $5,972.26 ("Past Due Amounts"), and set forth a deadline by which Defendants were required to pay such amounts. Copies of the November 5, 2007, and December 12, 2007 correspondence are attached as **Exhibit D**.

27.      Pursuant to the terms of the Franchise Agreement, Defendants' failure to cure their contractual breaches constituted a default and permitted PostNet to terminate the Franchise Agreement. *See* Exhibit A.

28.      On December 21, 2007, after Defendants defaulted under the Franchise Agreement, PostNet terminated the Franchise Agreement in accordance with its rights therein. A copy of the December 21, 2007 Confirmation of Termination is attached as **Exhibit E**.

29.      In terminating the Franchise Agreement, PostNet advised Defendants of the post-termination covenants set forth in the Franchise Agreement, and informed Defendants that their failure to abide by these covenants would entitle PostNet to seek injunctive and other relief and to recover all attorneys' fees and costs incurred in seeking such relief. *Id*.

**III.      Defendants' Breaches of the Post-Termination Covenants**

30.      In direct breach of the Franchise Agreement, Defendants are operating a Competing Business in the same location of their former PostNet Center.

31.      Additionally, in direct breach of the Franchise Agreement, Defendants are continuing to use the PostNet System and its Proprietary Marks, including PostNet's trade names and service marks, in the operation of the Competing Business. Attached as **Exhibit F** is a copy

of photographs taken on January 5, 2008, of the store front of Defendants' Competing Business which still bears the PostNet name.

32.     Upon learning of Defendants' Competing Business, PostNet contacted Defendants and directed them to cease and desist their Competing Business and use of PostNet's Proprietary Marks.  A copy of the January 9, 2008 Cease and Desist Notification is attached as **Exhibit G**.  Defendants have not responded to this request and continue to operate a Competing Business in breach of the Franchise Agreement.

33.     Defendants' operation of the Competing Business is damaging PostNet by preventing PostNet from establishing a new franchise in Defendants' former territory and by wrongfully diverting PostNet's customers and business to Defendants' Competing Business.

34.     Moreover, because the Franchise Agreement has been terminated, PostNet has no direct control over Defendants as franchisees.  Consequently, Defendants are using the System and the Proprietary Marks in a manner that PostNet cannot oversee or control.

35.     The PostNet System and Proprietary Marks have a unique function in representing PostNet's intangible assets such as reputation and goodwill.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

36.     PostNet re-alleges the previous allegations as if fully set forth herein.

37.     Pursuant to the Franchise Agreement and the Guarantee, Defendants agreed that, upon termination of the Franchise Agreement, they would not, directly or indirectly, "own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which offers the same or similar products or services

as those offered by the Center, and which is located: (i) at the Approved Location; or (ii) within a ten mile radius of the Protected Territory."

38.     Pursuant to the Franchise Agreement and Guarantee, Defendants also agreed that, upon termination of the Franchise Agreement, they would "immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; the Proprietary Marks; and all other proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the System."

39.     Defendants are operating a business in the same location as their former PostNet Center that is the same or extremely similar to the business of a PostNet Center.

40.     In the operation of their Competing Business, Defendants are using PostNet's Proprietary Marks, including the PostNet logo as displayed prominently on the store front of the Competing Business, and the PostNet System.

41.     The operation of the Competing Business is a breach of the post-term covenants expressly set forth in the Franchise Agreement, and Defendants' obligations under the Guarantee to abide by the same.

42.     Defendants' breaches of the Franchise Agreement and the Guarantee have damaged PostNet because its customers will continue to identify the Competing Business with its name and brand, especially because the Competing Business is in the same location as Defendants' former PostNet Center and because Defendants are using the PostNet name, logo, and other Proprietary Marks in operating the Competing Business.

43.     Defendants have also breached their contractual obligation to pay PostNet the Past Due Amounts owed pursuant to the Franchise Agreement.

44.     Defendants' conduct has damaged PostNet in an amount to be determined at trial, but in any event an amount exceeding $75,000.

## SECOND CLAIM FOR RELIEF
### Permanent Injunctive Relief

45.     PostNet re-alleges the previous allegations as if fully set forth herein.

46.     Under Federal Rule of Civil Procedure 65(a) and the express terms of the Franchise Agreement, PostNet is entitled to a permanent injunction (the "Proposed Relief") restraining and mandating the following conduct by Defendants:

     a.   Immediately cease operating the Competing Business within the geographic locations outlined in the Franchise Agreement;

     b.   Immediately discontinue the use of PostNet's Proprietary Marks and the PostNet System;

     c.   Immediately return to PostNet all confidential and proprietary information; and

     d.   Immediately pay to PostNet all Past Due Amounts under the Franchise Agreement as set forth in the December 21, 2007 Confirmation of Termination.

47.     PostNet will suffer irreparable harm unless the Proposed Relief is granted. Specifically, Defendants' continued operation of the Competing Business and use of the Proprietary Marks and PostNet System is preventing PostNet from establishing a new franchise in Defendants' former territory and is causing PostNet to lose business.

48.     Moreover, Defendants' operation of the Competing Business and use of PostNet's Proprietary Marks will irreparably harm the reputation and goodwill associated with PostNet because PostNet will lose control over the use of its Proprietary Marks and confidential information, including the way that information is presented to the public.

49.     The threatened injury to PostNet, if the Proposed Relief is not entered, far outweighs whatever damage the Proposed Relief may cause to Defendants.

50.     If issued, the Proposed Relief would not be adverse to the public interest.  Rather, the Proposed Relief would be in the interest of the enforceability of contracts.

51.     There is a substantial likelihood that PostNet will prevail on the merits of its underlying claims.  Defendants' post-termination breaches of the Franchise Agreement are beyond dispute.

### THIRD CLAIM FOR RELIEF
### Infringement of Federally Registered Marks

52.     PostNet re-alleges the previous allegations as if fully set forth herein.

53.     As a result of Defendants' unauthorized use of PostNet's Proprietary Marks, including its federally registered trade marks, Defendants have caused and are likely to continue to cause confusion or mistake or to deceive the public, misleading consumers as to the affiliation, connection, or association between Defendants and its services and PostNet and its commercial activities, intending to cause customers to rely thereon, and have knowingly offered said services in commerce with the knowledge of the falsity and misleading effect of such designations, in violation of 15 U.S.C. §§ 1114 and 1125(a).

54.     As a result of Defendants' acts, PostNet has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, and will experience substantial loss of revenues and profits.

55.     Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of PostNet.  PostNet has no adequate remedy at law for Defendants' wrongful acts.

56.     Unless Defendants are permanently enjoined from the foregoing conduct, PostNet will be irreparably harmed by:

    a.   Public confusion over the association, connection or affiliation of PostNet's services and Proprietary Marks with those of Defendants;

    b.   The loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and

    c.   Economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

57.     PostNet has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
**Federal Trademark Dilution**

58.     PostNet re-alleges the previous allegations as if fully set forth herein.

59.     As a result of Defendants' use of PostNet's Proprietary Marks in commerce in connection with their services, Defendants has intended to cause, have caused or are likely to continue to cause dilution of the distinctive quality of PostNet's Proprietary Marks in violation of 15 U.S.C. § 1125(c).

60.     On information and belief, Defendants willfully intended to trade on PostNet's reputation.

61.     By reason on Defendants' acts, PostNet has suffered and will continue to suffer damage and injury to its business, reputation and good will, and will sustain substantial loss of revenues and profits.

62.   Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of PostNet.

63.   PostNet has no adequate remedy at law.

WHEREFORE, PostNet respectfully requests the Court to enter judgment in its favor and against Defendants, jointly and severally, as follows:

1.   On the First Claim for Relief:

    a.   Declare that Defendants have breached their contractual obligations to PostNet under both the Franchise Agreement and the Guarantee;

    b.   Order that Defendants return all Proprietary Marks and confidential information to PostNet and immediately cease operating the Competing Business;

    c.   Order that Defendants pay all Past Due Amounts under the Franchise Agreement to PostNet; and

    d.   Order that Defendants reimburse PostNet for all costs and reasonable attorneys' fees incurred by PostNet as a result of Defendants' breach of their contractual obligations.

2.   On the Second Claim for Relief, for a permanent injunction restraining and mandating the following conduct by Defendants:

    a.   Immediately cease operating the Competing Business within the geographic locations outlined in the Franchise Agreement;

     b.     Immediately discontinue the use of the Proprietary Marks and the PostNet System, as those terms are defined in the Franchise Agreement;

     c.     Immediately return to PostNet all proprietary and confidential information.

3.     On the Third and Fourth Claims for Relief, issue an Order:

     a.     Permanently enjoining Defendants, their employees, agents, representatives and all persons acting in concert or in participation with him, from using for any commercial purpose whatsoever PostNet's Proprietary Marks;

     b.     Directing Defendants to file with this Court and serve on counsel for PostNet, within thirty (30) days after entry of an injunction issued by the Court in this action, a written report as provided in 15 U.S.C. § 1116;

     c.     Directing Defendants to place and pay for corrective advertising as to cure the effects of their trademark infringement and dilution;

     d.     Directing Defendants to account for their profits and ordering that PostNet shall recover from Defendants all of PostNet's damages and costs arising from the foregoing acts of intentional infringement and dilution, enhanced as the Court deems just, together with prejudgment interest and sum equal to three times PostNet's damages pursuant to 15 U.S.C. § 1117; and

     e.     Granting statutory attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and pursuant to the Franchise Agreement.

4.    For Such other relief as the Court deems just and proper.

DATED this 22nd day of January, 2008.

SNELL & WILMER L.L.P.

s/ Christine M. Garrison
Michael E. Lindsay
Christine M. Garrison
One Tabor Center, Suite 1900
1200 Seventeenth Street
Denver, Colorado 80202
Telephone:  303-634-2000
Facsimile:  303-634-2020

CARLTON FIELDS, P.A.

s/ David E. Cannella
David E. Cannella
Florida Bar No. 983837
CNL Center at City Commons
450 South Orange Avenue
Orlando, FL  32801-3336
Telephone:  (407) 849-0300
Facsimile:  (407) 648-9099

## **VERIFICATION**

STATE OF COLORADO     )
                         )ss:
COUNTY OF DENVER     )

      Brian Spindel, being first duly sworn and under oath, deposes and affirms the following:

      1.     I am the Executive Vice President of PostNet International Franchise Corporation ("PostNet"), the plaintiff in the above-entitled action, and I am an authorized representative of PostNet.

      2.     I have read the entire foregoing Verified Complaint and I understand the allegations therein.

      3.     I have personal knowledge that the factual allegations in the foregoing Verified Complaint are true and correct, or I have verified the truthfulness of these factual allegations from reliable sources.

      4.     I am over the age of 18 and am competent to testify to the truthfulness of the factual allegations in the foregoing Verified Complaint, and I would so testify if properly called in this action.

                            s/ Brian Spindel
                            Brian Spindel

SUBSCRIBED and SWORN to before me this 17th day of January, 2008.

                            s/ Stephannie Harris
                            Notary Public
                            Residing in _____

156631.4