## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**POSTNET INTERNATIONAL FRANCHISE
CORPORATION,**

                              **Plaintiff,**

**-vs-**                                                      **Case No.  6:08-cv-106-Orl-31GJK**

**R&B CENTRAL ENTERPRISES, INC.,
ROGER L. TAYLOR, and BEATRIZ I.
TAYLOR**

                              **Defendants.**
_____

### REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

        This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. No. 23)** |
| **FILED:** | **May 2, 2008** |
| | |
| | **THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED**. |

## I.    <u>BACKGROUND</u>

        On January 22, 2008, Plaintiff PostNet International Franchise Corporation (herein "Plaintiff"

or "PostNet") instituted this action by filing a four-count Complaint ("Complaint") against

Defendants R&B Central Enterprises, Inc. (herein "R&B"), Rodger C. Taylor (incorrectly named in

the Complaint as Rodger L. Taylor) (herein "Rodger Taylor") and Beatriz I. Taylor (herein "Beatriz

Taylor") (collectively, the "Defendants"). Doc. No. 1.   The Complaint asserts breach of contract,

infringement of federally registered marks and federal trademark dilution, and it seeks permanent injunctive relief. *Id.* Plaintiff is a Nevada corporation with its principal place of business located at 1819 Wazee Street, Denver, Colorado 80202. Doc. No. 1 at 3, ¶ 9. R&B is a Florida corporation with its principal place of business located at 4185 West Lake Mary Blvd., Lake Mary, Florida 32746.[1] Rodger Taylor and Beatriz Taylor are residents of Longwood, Florida. Id., ¶¶ 10-12.

On May 1, 2000, Plaintiff and the Defendants entered into a PostNet International Franchise Corporation Franchise Agreement (herein, the "Franchise Agreement"). Doc. No. 1 at 4, ¶ 16; Doc. Nos. 1-3; 1-4. Pursuant to the Franchise Agreement, Plaintiff granted Defendants a nonexclusive license to operate a PostNet Center (herein, the "Center") using Plaintiff's "unique and distinctive system" (herein, the "System") and to use Plaintiff's trade names, service marks, trademarks, logos, emblems, and indicia of origin (herein, collectively, "Proprietary Marks") in the operation of the Center. *Id.* at ¶ 17. Among Plaintiff's Marks were federally registered trademarks: Service Mark 1,801,313 (POSTNET) and Service Mark 3,208,053 (POSTNET CREATE DUPLICATE DELIVER). *Id.* at ¶ 18; Doc. No. 1-5. By executing the Franchise Agreement, the Defendants agreed to the following:

- To pay Plaintiff a "continuing weekly royalty fee in an amount equal to four percent (4%) of the Gross Sales for the Center." Doc. No. 1-3 at 8; ¶ 3.2.[2]

- In the event of termination of the Franchise Agreement, Defendants would abide by post-termination covenants, such as:

  o Immediately cease to operate the Center, and shall not thereafter, directory or indirectly, represent to the public or hold itself out as a present or former franchisee of PostNet.

---

[1] The Complaint states that R&B is located at 4195 Lake Mary Blvd., but this appears to be a typographical error as all other documents and the Florida Department of State indicate its location is 4185 Lake Mary Blvd.

[2] Pursuant to an addendum to the Franchise Agreement, the parties agreed that the continuing weekly royalty fee would be three percent (3%) of the Gross Sales for the Center through March 31, 2007, and 4% of the Gross Sales from April 1, 2007 through the duration of the Franchise Agreement. Doc. No. 1-6 at 4.

o   Immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures, and techniques associated with the System; the Proprietary Marks; and all other proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.

o   Take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Marks and . . . furnish PostNet with evidence satisfactory to PostNet of compliance with this obligation within thirty days after termination or expiration.

o   In the event it continues to operate or subsequently begins to operate any other business, not to use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute PostNet's rights in and to the Proprietary Marks, and further agrees not to use any designation of origin, description, representation, trademark, or tradename which suggests or represents a past or present association or connection with Plaintiff, the System, or the Proprietary Marks.

o   Promptly pay all sums owing to PostNet and its affiliates, including, in the event of Defendants' termination, all damages, costs, and expenses, including reasonably attorneys' fees, incurred by PostNet as a result of the default.

o   Immediately return the Manual and all other documents which contain confidential information relating to the operation of the Center.

Doc. No. 1-4 at 8-9, § 14.  In the event of termination, Defendants also agreed "that [they] shall not, without PostNet's prior written consent, for a continuous, uninterrupted one year period commencing upon the date of . . . termination under this [Franchise] Agreement (regardless of the cause for termination . . . own, maintain, advise, operate, engage in, be employed by, make loans to, or have any interest in or relationship or association with a business which offers the same or similar products or services as those offered by the Center, and which is located: (i) at the Approved Location;[3] or (ii) within a ten mile radius of the Protected Territory."[4] Doc. No. 1-5 at 10-11, ¶ 15.3.  Rodger Taylor

_____

[3] The Approved Location is defined as 4185 W. Lake Mary Blvd., Lake Mary, Florida 32746.
[4] The Protected Territory is not defined within the Franchise Agreement, but the Franchise Agreement indicates that the geographical area is described in an attachment.

and Beatriz Taylor executed a personal guarantee wherein they certified full performance and discharge of all obligations set forth in the Franchise Agreement.  Doc. No. 1-6, ¶ 2.

On December 21, 2007, as a result of the Defendants' failure to pay past-due royalties fees, interest and audit fees, Plaintiff terminated the Franchise Agreement.  Doc. No. 1 at 7, ¶¶ 26-28; Doc. No. 1-7.  Plaintiff advised Defendants of the covenants applicable to the termination and that a failure to adhere to the covenants would entitle Plaintiff to seek injunctive and other relief and to recover attorneys' fees and costs incurred in those efforts.  *Id.*, ¶ 29.  However, Plaintiff maintains in its Complaint that Defendants have breached those covenants by operating a competing business at the Approved Location and by continuing to use the System and its Proprietary Marks, including Plaintiff's trade names and service marks.  *Id.*, ¶¶ 31-32.  Plaintiff attached photographs of the storefront to its Complaint which indicate the Defendants are maintaining a business which offers the same or similar products or services at the Approved Location, and therefore, are in violation of the Franchise Agreement. Doc. No. 1-11.

Plaintiff asserts that the Defendants breached their post-termination contractual obligations and violated the Lanham Act, 15 U.S.C. § 1501 *et seq.  Id.*  The Complaint seeks a permanent injunction. *Id.*  On March 3, 2008, the Honorable Gregory A. Presnell granted Plaintiff's motion for a preliminary injunction.  Doc. No. 17.  On May 2, 2008, Plaintiff moved for a default judgment ("Motion") as none of the Defendants answered or responded to the Complaint.[5]  Doc. No. 23. Plaintiff seeks an award of damages in the amount of $8,804.40 and an award of attorneys' fees and

---

[5] On June 5, 2008, Rodger Taylor filed a document titled "Declaration (Affidavit of Truth and true bill) of Rodger Carlton Taylor" (the "Declaration") which neither addresses the Clerk's Entry of Default (Doc. No. 13) nor the present Motion. Doc. No. 27.  Moreover, the document does not deny the allegations raised in the Complaint.

costs totaling $16,635.23.  *Id.* at 4.[6]  Attached to the Motion are the affidavits of Brian Spindel, which states Plaintiff has been damaged in the amount of $8,804.40 in past advertising and royalty fees due to Defendants' actions; Michael Lindsay, which states the total amount of attorneys' fees accrued in this action as of May 2, 2008 was $16,114.00, and costs were $521.23; and Cynthia Trueba, which states she conducted and obtained surveillance of the former PostNet store. Doc. No. 23 at 5-11.  The Motion is now before the Court.

I.   **THE LAW**

   A.   **Default Judgment**

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default.  Fed. R. Civ. P. 55 (a) (emphasis added).   The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court.  Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[7]  Under Federal Rule of Civil Procedure 55(b), if a default judgment is sought "for a sum certain or a sum that can be made certain by computation," the clerk "on the plaintiff's request, with an affidavit showing the amount due" must enter judgment for that amount.  Fed. R. Civ. P. 55(b).  Rule 55 (b)(2) further provides:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or an incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the

---

[6] Pursuant to the Franchise Agreement, Defendants agreed to pay all costs and reasonable attorneys' fees incurred by Plaintiff in obtaining injunctive or other such relief. Doc. No. 1-4 at 17-8.

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit that were rendered prior to October 1, 1981.

> application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment , it needs to:
> > A) conduct an accounting;
> > B) determine the amount of damages;
> > C) establish the truth of any allegation by evidence; or
> > D) investigate any other matter.

*Id.* A default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citing *Nishimatsu*, 515 F.2d at 1206). A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).

### B.   Breach of Contract and Damages

Under Nevada law, the applicable law in this diversity case as provided by the Franchise Agreement, a breach of contract consists of "a material failure of performance of a duty arising under or imposed by agreement." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (2000). Plaintiff seeks $8,804.40 in damages due to Defendants' breach of the post-termination provisions of the Franchise Agreement. Doc. No. 23 at 3.

### C.   The Lanham Act

15 U.S.C. § 1114(1) provides that:

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in

connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).  Thus, when a person "uses[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which is "likely to cause confusion, or to cause mistake, or to deceive," that person is liable for trademark infringement.  *Id.*

### D.    **Permanent Injunction**

The Lanham Act permits the issuance of permanent injunctions to prevent future violations. 15 U.S.C. § 1116.  A district court may grant permanent injunctive relief if the moving party shows that: 1) it has actual success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

In trademark infringement actions, injunctive relief is appropriate as: 1) "there is not adequate remedy at law to redress infringement and [2)] infringement <u>by its nature</u> causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (*citing Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)).  Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the

7

synonymous right of the trademark owner to control his products' reputation." *Id.* (*citing James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

### E. Attorney's Fees

Under Nevada law, contract provisions authorizing the recovery of attorney's fees are enforceable. *Sun Realty v. District Court*, 91 Nev. 774, 776 (1975).[8]  Plaintiff seeks an award of attorneys' fees and costs pursuant to the Franchise Agreement, which states:

> PostNet also shall be able to seek injunctive relief to prohibit any act or omission by Store Owner or its employees that constitutes a violation of any applicable law, is dishonest or misleading to Store Owner's customers or to the public, or which may impair the goodwill associated with the Proprietary Marks; and Store Owner agrees to pay all costs and reasonable attorneys' fees incurred by PostNet in obtaining such relief.

Doc. No. 1-4 at 17-8.[9]

## II. APPLICATION

After careful review of the Complaint and Motion filed in this action, as well as the evidence submitted with the pleadings, the undersigned recommends that Plaintiff has sufficiently established that the Defendants have been and continue to be in violation of the Franchise Agreement. The entry of default judgment and a permanent injunction is warranted.  Defendants were properly served, and have had numerous opportunities to appear and contest the claims, as well as the Motion now before the Court.  However, Plaintiff's claims and Motion remain unopposed.  Moreover, Plaintiff has established actual success on the merits; that irreparable injury will be suffered unless the injunction

---

[8] The Franchise Agreement specifically designates the laws of Nevada for interpretation and construction. Doc. No. 1-4 at 15.

[9] Under Section 35(a) of the Lanham Act, courts may also award reasonable attorneys fees to the prevailing party in "exceptional" cases which means the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner."  15 U.S.C. § 1117(a); *Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1205 (11th Cir. 2001) (reversing fee award that lacked sufficient factual findings); *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (quoting 1974 U.S.C.C.A.N. 7132, 7133).

issues; threatened injury to the Plaintiff outweighs whatever damage the proposed injunction may cause the Defendants and the injunction will not be adverse to the public interest. *Klay*, 376 F.3d at 1097.

Plaintiff seeks an award of attorneys' fees and costs in the amount of $16,635.23 and attached to its Motion the aforementioned affidavits. Doc. No. 23 5-11. Plaintiff has established and Defendants have effectively admitted their fault as to the allegations raised in the Complaint, and pursuant to the Franchise Agreement, Defendants are responsible for Plaintiff's attorneys' fees and costs. However, aside from the affidavit of Michael Lindsay, counsel did not furnish requisite time sheets to establish that the time expended by counsel was reasonable or supporting evidence that the hourly rates used are reasonable. Accordingly, the Court is without sufficient information to recommend awarding Plaintiff its attorneys' fees and costs at this juncture.

Therefore, it is **RECOMMENDED** that:

1. Plaintiff's Motion for Entry of Default Final Judgment [Doc. No. 23] be **GRANTED**;

2. the Court should adopt Plaintiff's Proposed Default Judgment with exception to clause e. of Doc. No. 23-2 at 2 in regard to attorneys' fees and costs;

4. the Court should retain jurisdiction to entertain any motion for attorneys' fees; and

3. the Clerk should be directed to enter judgment in the amount of $8,804.40.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 26, 2008.

Copies furnished to:
The Honorable Gregory A. Presnell
Counsel of Record
Unrepresented Party

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE